UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SARAH BLODGETT DUNBAR | CIVIL ACTION |
| VERSUS | NO. 08-711 |
| DR. CLAUDIA SEGER-THOMSCHITZ | SECTION: "B"(5) |

## ORDER AND REASONS

Plaintiff, Sarah Blodgett Dunbar, moves for partial summary judgment on the first amended complaint and for summary judgment on Defendant's counterclaims. (Rec. Doc. No. 16). Plaintiff alleges that she has acquired ownership of a work of art, a painting entitled *Portrait of a Youth*, and that Defendant's claims have prescribed. Defendant opposes the motion. (Rec. Doc. No. 35). After review of the pleadings and applicable law and for the following reasons,

**IT IS ORDERED** that Plaintiff's Motions for Partial Summary Judgment on her first amended complaint and for Summary Judgment on Defendant's counterclaims are **GRANTED**.

### BACKGROUND

This case arises out of an adverse ownership claim made by Defendant, Dr. Claudia Seger-Thomschitz (Defendant), for the Oskar Kokoschka painting entitled *Portrait of a Youth* (Hans Reichel)(1910)("the painting"). (Rec. Doc. No. 1). The painting is currently in Plaintiff's physical possession in New Orleans,

Louisiana. While the painting has been loaned for exhibitions, Plaintiff has had continuous, uninterrupted possession of the painting since she inherited the painting from her mother in 1973. (Rec. Doc. No. 1).

Defendant is the sole heir of Raimund Reichel's estate, and she alleges that the painting was confiscated by the Nazis from Reichel's ascendants, in Vienna, Austria, in 1939. (Rec. Doc. No. 10). Prior to the painting's alleged Nazi confiscation and under duress, Defendant alleges Raimund Reichel's father, Dr. Oskar Reichel transferred ownership of the painting and four other paintings to Otto Kallir-Nirenstein (Kallir) in 1938. (Rec. Doc. No. 10). Kallir was a Jewish art dealer whose art gallery exhibited the painting in 1924 and 1933, for possible sale, at the request of the Reichel family. *The Museum of Fine Arts, Boston v. Dr. Claudia Seger-Tomschitz*, No. 08-10097 (D. Mass. May 28, 2009)(Zobel, J.). Defendant alleges that when Plaintiff's mother, Sarah Reed-Platt purchased the painting from Otto Kallir's Gallery St. Etienne in 1946 in New York, she knew or should have known that the painting may have been stolen from Jewish people in Europe, and therefore she had a duty to investigate the painting's ownership. (Rec. Doc. No. 35). Defendant further alleges because Otto Kallir did not have

ownership of the painting, he was not capable of transferring ownership to Plaintiff's mother. (Rec. Doc. No. 35).

Plaintiff argues she has acquired the painting through application of a ten year and three year acquisitive prescription periods pursuant to Louisiana Civil Code arts. 3490 and 3491. (Rec. Doc. No. 16). Plaintiff further argues that even if Defendant has a claim arising out of quasi-contract for unjust enrichment, such a claim is subject to a ten-year liberative prescription period pursuant to Louisiana Civil Code art. 3499. (Rec. Doc. No. 38). Accordingly, Defendant's claims arising from quasi-contract have prescribed. (Rec. Doc. No. 38). Finally, Plaintiff argues there are no material issues of fact regarding her or her mother's good faith acquisition and possession of the painting.

Defendant argues that an action to recover a moveable based on quasi-contract may not be subject to liberative prescription. (Rec. Doc. No. 35 at 13). Defendant argues that when a person wrongfully obtains property, a duty to return that property arises in quasi-contact. (Rec. Doc. No. 35 at 15). Further, Defendant argues facts and circumstances at the time when Mrs. Sarah Reed-Platt purchased the painting warranted investigation as to the painting's history of ownership. Defendant argues that

3

because Plaintiff's mother ignored these circumstances and failed to investigate, she was a bad-faith possessor who cannot obtain ownership, and thus cannot transfer ownership under Louisiana law. (Rec. Doc. No. 35). Finally, Defendant asks that if this Court finds employing Louisiana law would result in a ruling in favor of Plaintiff, that this Court should use its authority to supplant Louisiana law with federal common law. (Rec. Doc. No. 35). Defendant argues an adverse ruling would be contrary to the Holocaust Victims Redress Act passed by Congress in 1998. (Rec. Doc. No. 35).

## DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322, 323 (1986). A court must be satisfied that no reasonable trier of fact could find for the moving party, or "that the evidence favoring the nonmoving party is insufficient to enable a reasonable juror to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears

the burden of showing there are no genuine issues of material fact.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See Id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**B. ADVERSE OWNERSHIP CLAIMS UNDER LOUISIANA LAW**

While there is some dispute as to the nature of Defendant's claims, actions seeking ownership of property or enforcement of rights thereof, whether movable or immovable are real actions. Yiannopoulos, 2 *Louisiana Civil Law Treatise,* § 241, 476 (1991). Such real actions, otherwise known as "revindicatory actions," are expressly authorized by the Louisiana Civil Code. La. Civ. Code art. 526. As the official comments to the Code indicate, there are two kinds of revindicatory actions, depending on the

5

object seized: (1) a "petitory action" for the recovery of immovable property, and (2) an "innominate real action" for the recovery of movable property. Yiannopoulos, *supra,* § 242, 477. It follows from this basic dichotomy that, as the Civil Code specifically provides, liberative prescription periods for all manner of personal actions, including delictual, contractual, and quasi-contractual would not bar real actions seeking to protect the right of ownership. La. Civ. Code. Arts. 3492-3502; Yiannopoulos, *supra,* § 249, at 487. The rationale for this distinction is that "[u]nder our Civil Code, ownership can never be lost by the failure to exercise it--only by the acquisition of ownership by another through possession sufficient to acquire it through acquisitive prescription." *All-State Credit Plan Natchitoches, Inc. v. Ratliff*, 279 So.2d 660, 666 (La. 1972).

Pursuant to article 3491 of the Louisiana Civil Code, "one who has possessed a movable as owner for ten years acquires ownership by prescription. Neither title nor good faith is required for this prescription." It is well established that the burden of proof of establishing the facts of acquisitive prescription rests on the party who makes the plea. *Humble v. Dewey*, 215 So.2d 378 (La. App. 3rd Cir. 1968). However, the possessor is aided in this burden by a presumption that she/he

6

possessed as owner.  Louisiana Civil Code article 3488 provides:

> [A]s to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another.

Louisiana Civil Code article 3421 defines possession as follows:

> Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name.

In the instant litigation, Plaintiff has established that she possessed the painting for well over ten years.  Plaintiff acquired the painting as a bequest from her mother in 1973.  Plaintiff's possession was open and continuous.  Moreover, Plaintiff possessed the painting for herself as evidenced by her acts conveying ownership.  In particular, Plaintiff accepted the painting as a bequest from her mother, Plaintiff displayed the painting in her home, and Plaintiff loaned the painting for exhibitions at local and national galleries, further publicizing its location and its ownership.  Therefore, Plaintiff has acquired ownership irrespective of her good or bad faith pursuant to above-cited legal authorities.

**C. CLAIMS ARISING IN QUASI-CONTRACT AND UNJUST ENRICHMENT**

Even if Defendant's counter-claims arise from quasi-contract and unjust enrichment, these claims have prescribed. The Louisiana Civil Code establishes the general rule that personal actions prescribe by ten years liberative prescription. *State of Louisiana v. City of Pineville*, 403 So.2d 49, 53 (La. 1981); La. Civ. Code. art. 3544. Actions in quasi-contract are governed by the general ten-year prescriptive term set forth by article 3544. *See also Minyard v. Curtis Products, Inc.*, 251 La. 624 (La. 1967). Therefore, assuming *arguendo* that Defendant has a valid claim arising in quasi-contract due to unjust enrichment, such claims have prescribed.

The period for liberative prescription begins to toll when the claimant reasonably should have discovered the injury. *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La. 1987). There are special considerations when the injury alleged is related to stolen works of art, antiquities, or cultural property. *O'Keefe v. Snyder*, 83 N.J. 478, 493 (N.J. 1980). The court must consider whether the claimant used due diligence in recovering the art. In similar cases, claimants have been found to have exercised due diligence by notifying the Art Dealers of America, the International Foundation for Art Research, UNESCO,

or similar national and international organizations. *O'Keefe*, 83 N.J. at 494; *Autocephalous Greek Orthodox Church of Cyprus v. Goldberg and Feldman Fine Arts, Inc.*, 917 F.2d 278, 283 (7th Cir. 1990). Other claimants whose property was confiscated by Nazis placed advertisements in international publications and pursued claims for monetary restitution in German courts. *Vineburg v. Bisonnette*, 548 F.3d 50 (1st Cir. 2008).

In this case, Defendant's ascendants, the Reichel family, sought compensation for the forced sale of their family home, a commercial property, and another art collection which were forcibly sold or transferred. (Rec. Doc. No. 36-3). The Reichel family never claimed compensation for any of the Kokoschka works that were transferred to Kallir for sale. Furthermore, the location of the painting at issue has been ascertainable since its sale. Plaintiff's mother recorded the sale and loaned the painting to local and national galleries for public exhibitions. (Rec. Doc. No. 16-3). Given this evidence, the Reichel family and its heirs had ample notice of any possible claim to the painting. Although Defendant accuses Kallir of dealing in stolen art as an agent of the Nazis, the Reichel family was aware of the early history of ownership, including the transfer, of this work of art, yet took no action to recover it after the fall of the

9

Nazi regime. The inordinate delay in asserting claims prejudices Plaintiff because all witnesses to the sale to Kallir are now deceased. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); *The Museum of Fine Arts, Boston*, No. 08-10097 (D. Mass. May 28, 2009)(Zobel, J.). Therefore, Defendant's claims in quasi-contract and unjust enrichment have prescribed.

  **D. HOLOCOAUST VICTIMS REDRESS ACT**

The Holocaust Victims Redress Act provides in pertinent part:

> It is the sense of Congress that consistent with the 1907 Hague Convention all governments should undertake good faith efforts to facilitate the return of the private and public property, such as works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof that the claimant is the rightful owner.

Act § 202, 112 Stat. at 17-18. Defendant's assertion that this court may supplant Louisiana prescription laws in order to ensure the goals of the Holocaust Victims Redress Act will not be compromised is problematic for a number of reasons.

First, there is no "federal common law" cause of action created by this Act. The Supreme Court held Congress has no power to declare substantive rules of common law applicable to a state whether they be general, commercial law, or part of the law

of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. *Eerie v. Tompkins*, 304 U.S. 64, 78 (1938)(*citing Baltimore & Ohio R.R. Co. v. Baugh*, 149 U.S. 368, 401 (1893)). Second, the Holocaust Victim's Redress Act was not intended to give individuals a private cause of action. *Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007). Finally, the plain language of the statute indicates it was meant to encourage return of works of art where (1) the art was confiscated from claimant during the period of Nazi rule; and (2) the claimant has reasonably proven she is the rightful owner. Act § 202, 112 Stat. at 17-18. Undisputed evidence establishes that the Reichel family sought compensation for other works of art and property, but not this one. Further, the family twice loaned this painting to Kallir for exhibit and possible sale prior to Nazi occupation. Those with more direct knowledge about this painting within the Reichel family than Defendant never sought or petitioned for its return to the family. Moreover, Plaintiff has put forth considerable evidence which demonstrates she is the rightful owner. Defendant's suppositions to the contrary fail to create a material factual dispute over ownership by Plaintiff. Therefore, the Court will not supplant Louisiana's prescription laws in light of above undisputed evidence.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motions for Partial Summary Judgment on her first amended complaint and for Summary Judgment on Defendant's counterclaims are **GRANTED.**

New Orleans, Louisiana, this 1st day of July, 2009.

_____
UNITED STATES DISTRICT JUDGE